# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **LORRAINE GLOVER,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** <br> **5:19-cv-00103-TES** |
| **I.C. SYSTEMS, INC.,** | |
| *Defendant.* | |

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

In this consumer protection law case, the parties reached a settlement, and, pursuant to an "Offer of Judgment," Defendant I.C. Systems, Inc. ("ICS") agreed to pay Plaintiff Lorraine Glover's reasonable attorneys' fees and taxable costs. [Doc. 14]; [Doc. 14-1]. But the parties could not agree on the amount. And the Court certainly understands why. Although Plaintiff ultimately settled her case for $1,050.00, she has now asked the Court to award her approximately 100 times that amount[1] – yes, you read that right, more than $100,000.00 – in attorneys' fees and costs. *See* [Doc. 18-1, p. 19]; [Doc. 28, p. 9]. Simply put, Plaintiff offers no good reason (and there would have to be lots of really, really good reasons) why the Court should award her so much. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's

---

[1] To frame this in terms of percentages, Plaintiff asks for just under 10,000% of her settled-for amount.

motion [Doc. 18].

## BACKGROUND

To start, the Court sees this as a relatively straightforward, not complex, matter that arose when Plaintiff, an elderly woman, received a collection letter from Defendant that incorrectly listed the amount she allegedly owed Cox Communications.

On April 21, 2018, Plaintiff received a collection letter from Defendant seeking $455.13 in principal and a $113.78 collection charge. [Doc. 8-1, p. 1]. On September 23, 2018, Glover's counsel sent Defendant a "validation demand" seeking documentation to verify Plaintiff's debt. [Doc. 8-2]. On October 18, 2018, Defendant verified that Plaintiff owed $455.13 principal, but lowered the amount of the collection charge from $113.78 to $96.28. [Doc. 8-3].

In response to Defendant changing the proposed collection charge in its verification letter, Plaintiff's attorney demanded $10,000.00, alleging Defendant violated several consumer protection laws when it lowered the proposed collection charge by $17.50, despite Plaintiff not making any payments. [Doc. 8-4, pp. 1—2]. According to Plaintiff, "the amount due in the [initial] letter was false." [*Id.*, p. 1]. On January 7, 2019, Defendant countered with an offer to pay $2,000.00 to settle any claims. [Doc. 25-1]. Plaintiff rejected it. [Doc. 25-2].

Obviously banking that she would collect more than $2,000.00, Plaintiff filed suit on March 20, 2019. [Doc. 1]. In a three-count complaint, Plaintiff claimed Defendant

2

violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq.,

Georgia's Fair Business Practices Act (FBPA), O.C.G.A §§ 10-1-390 et seq., and Georgia's

Unfair and Deceptive Practices Towards the Elderly Act ("UDPTEA"), O.C.G.A§ 10-1-

850 et seq. *See* [Doc. 1]. Over the course of the suit, the parties engaged in the discovery

process and deposed three individuals: Plaintiff in Perry, Georgia; Defendant's

corporate representative under Federal Rule of Civil Procedure 30(b)(6) in Minneapolis,

Minnesota; and a Cox Communications corporate representative in Atlanta, Georgia.

[Doc. 18-1, p. 2]. After 10 months of litigation, she settled the case for just over half of

what she was offered before suit. But, she now wants more than $100,000.00 in

attorneys' fees and costs for her efforts.

## DISCUSSION

### A.    Standard for Awarding Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees under the FDCPA, 15 U.S.C. § 1692k(a)(3), FBPA,

O.C.G.A. § 10-1-399(d), and UDPTEA, O.C.G.A. § 10-1-853. [Doc. 28, p. 5]. While

attorneys' fees are available for prevailing plaintiffs under these acts, the FBPA requires

a court to "deny a recovery of attorneys' fees and expenses of litigation which are

incurred after the rejection of a reasonable written offer of settlement made within 30

days of the mailing or delivery of the written demand for relief required by this Code

section." O.C.G.A. § 10-1-399(d). [2] Further, the UDPTEA only permits attorneys' fees "if appropriate." O.C.G.A. § 10-1-853. [3] Accordingly, the Court declines to award attorneys' fees under either Georgia statute.

Regardless, the Court is not required to follow any fee-shifting statute based on the language of the parties' settlement agreement. *See Embree v. Medicraft, Inc.*, 752 F.App'x 697, 699 (11th Cir. Sept. 12, 2018). As mentioned earlier, on January 15, 2020, Plaintiff accepted Defendant's Offer of Judgment for $1,050.00, plus reasonable attorneys' fees and costs. [Doc. 14]; [Doc. 14-1]. Based on the plain language of their agreement, the parties agreed that the Court would determine the attorneys' fees and taxable costs if they could not agree on a fair amount. The settlement agreement did not provide any specific method for determining attorneys' fees and costs or restrict the Court from performing any particular analysis. [4] As this case concerns debt collections,

---

[2] At the time of receiving the initial pre-suit settlement offer of $2,000.00, Plaintiff's attorney, Clifford Carlson, had billed 3.3 hours and spent $10.06 on postage and mailing. [Doc. 18-3, pp. 11, 38]. If Plaintiff would have taken this pre-suit offer, Plaintiff would have received her final settlement amount of $1050.00 over a year earlier, and Carlson would have received $950.00 for his services, or approximately $284.00 per billable hour and expenses. [Doc. 14].

[3] As Plaintiff's claim under the UDPTEA depends on a finding that Defendant violated the FBPA, the Court would likely not find awarding attorneys' fees appropriate under the UDPTEA. *See* O.C.G.A. §§ 10-1-851, 10-1-853; *see also Jackson v. Premium Capital Funding, LLC*, No. 1:09-CV-01392-CAM-GGB, 2009 WL 10682218, at *5 (N.D. Ga. Nov. 24, 2009), adopted by 2010 WL 11549857, at *3 (N.D. Ga. Mar. 17, 2010) (granting motion to dismiss as to plaintiffs' UDPTEA claim since they "failed to show the predicate violations of the FBPA necessary for recovery under the [UDPTEA]").

[4] Even in these circumstances, however, the Court must provide a rational basis that allows for meaningful appellate review. *See Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008) ("Any reductions to the requested hours must be concisely and clearly explained to allow for appellate review; otherwise, we must remand.").

4

the Court will rely on the existing framework for determining attorneys' fees under the FDCPA.

The FDCPA authorizes an award to any successful plaintiff of the costs of the action and a "reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The determination of what constitutes a reasonable fee is left to the sound discretion of the district court and will not be reversed absent an abuse of discretion. *See Davis v. Fletcher*, 598 F.2d 469, 470 (5th Cir. 1979). When awarding attorneys' fees under the FDCPA, like under the typical fee-shifting statute, "[t]he starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. This 'lodestar' may then be adjusted for the results obtained." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). However, an adjustment of the lodestar is "rare" because "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 442, 552 (2010). "Although a district court has wide discretion in performing these calculations, the court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Loranger* 10 F.3d at 781.

**B.**   **Reasonable Hourly Rate**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience,

and reputation." *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger*, 10 F.3d at 781 (citation omitted). Satisfactory evidence is "more than the affidavit of the attorney performing the work." *Id*.

Each of Plaintiff's lawyers claims a rate of $325.00, arguing they are experienced consumer rights litigators and citing to market surveys and declarations of two other consumer protection lawyers. [Doc. 18-1, p. 9]; *see* [Doc. 18-2]; [Doc. 18-6]; [Doc. 19]. The Defendant argues $275.00 would be reasonable and notes that the Court awarded that amount in the fall of 2019 and late 2018 to two of the attorneys representing Plaintiff. [Doc. 25, p. 8]; *Gordon v. S. Bureau Corp.*, No. 5:19-cv-63-MTT, 2019 WL 3937630, at *2 (M.D. Ga Aug. 20, 2019) (Denying Plaintiff's request for a $295.00 per hour rate and finding $275.00 per hour is a reasonable rate after considering prior cases and the Court's own experience); *Lahey v. S. Credit Bureau Corp.*, No. 5:18-cv-13-MTT, 2018 WL 5724442, at *1 (M.D. Ga. Nov. 1, 2018).

The U.S. Consumer Law Survey Report Plaintiff cites to states the median rate for attorneys handling credit rights cases in Macon, Georgia is $275.00. [Doc. 18-2, p. 290]. The survey notes that consumer lawyers in Macon, Georgia with 6 to 10 years of experience make an average hourly rate of $275.00. [*Id.*, p. 291]. Plaintiff states her most experienced attorney, John Nelson, has nine years of experience in consumer protection

law, starting in 2011. [Doc. 18-1, p. 15]; [Doc. 18-3, p. 2]; [Doc. 18-4, p. 2]. But, the survey does not justify Plaintiff's assertion that $325.00 is a reasonable hourly rate for her attorneys' services.

Plaintiff also provides, per the National Law Journal's 2015 Billing Survey, King and Spalding's $460.00 hourly rate for associates as evidence that Plaintiff's attorneys deserve an hourly rate of $325.00.  [Doc. 18-1, pp. 11—12]. The Court finds this argument equally unconvincing because the hourly rate of a King and Spalding associate in Atlanta has little bearing on the market rate for consumer protection lawyers in Macon.

Further, Hurt and Addleton, two experienced consumer practice lawyers familiar with Plaintiff's attorneys, assert that the billing rate of $325.00 per hour is reasonable based on the attorneys' work experience and the declarants' experience in negotiating attorney's fees during settlement discussions. [Doc. 19, Hurt Decl., ¶¶ 12—15, 26—28, 31]; [Doc. 18-6, Addleton Decl., ¶¶ 14—15, 21—23, 26]. While the Court agrees with declarants that Plaintiff's attorneys are experienced, Plaintiff has failed to show that a higher rate is deserved in this case as opposed to the other cases where some of Plaintiff's attorneys have received fee awards.

Accordingly, the Court finds that $275.00 per hour is the appropriate and reasonable hourly rate.

C.    <u>Number of Hours</u>

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Gordon,* 2019 WL 3937630, at *2 (citing *Bivins* 548 F.3d at 1350).

Plaintiff's counsel claims that, after excluding excessive, redundant, or otherwise unnecessary hours, the Court should find that they reasonably spent 310.4 billable hours on her case. [Doc. 18-1, p. 16]; [Doc. 28, p. 9]. Let's look at this request another way. Plaintiff argues that her lawyers reasonably (and that's the key word – reasonably) spent the equivalent of an entire month working 10 hours per day, including Saturdays and Sundays, on her case. The Court simply cannot find that many hours to be reasonable in this routine FDCPA case.

Plaintiff attempts to justify her request by pointing out that Defendant vigorously contested Plaintiff's action for almost ten months, resulting in three depositions in two states and the production of approximately 190 pages of documents. [Doc. 18-1, pp. 16—17]; [Doc. 28, p. 2]. Defendant conversely argues that this case was relatively straightforward, as evidenced by there being no dispositive motions. [Doc. 25, p. 11]. Further, Defendant points out that Plaintiff only submitted "27 written discovery requests on ICS and ICS propounded only 17 written discovery requests on Glover." [*Id.*]. After a thorough review, the Court concludes that the time claimed on multiple

tasks is plainly excessive. For instance:

- On November 11, 2019 and November 12, 2019, Glover's attorneys billed 17.9 hours for a motion to compel for lack of discovery responses that was never filed. [Doc. 25, pp. 14—15]; [Doc. 18-3, p. 23]. Defendant argues that this time was unnecessary since Plaintiff never filed the motion. Even if the motion was proper, Plaintiff's generic and bare descriptions of how her attorneys spent their time on this motion in no way begins to support the 17.9 hours they seek, especially since Plaintiff failed to attach the allegedly deficient responses in the record for the Court to evaluate.

- Similarly, Plaintiff's attorneys billed 19.4 hours for drafting her reply brief on the attorneys' fees motion. The Court has reviewed Plaintiff's reply brief and determined that spending 19.4 hours on that brief simply isn't reasonable.

- Plaintiff's counsel billed 11.9 hours for preparing Glover for her deposition. Some of this time may have been due to her being "an elderly woman . . . ravaged by dementia" as stated by Plaintiff.[5] [Doc. 28, p. 4]. However, Plaintiff's attorneys have not described how her memory decline caused an increase in the amount of time for deposition preparations and conversely argued at a telephone

---

[5] During her deposition, Plaintiff testified that she had never seen the collection letter in question, did not tell her attorneys to file suit, and had no idea she was even involved in a suit. [Doc. 33, Glover Depo., pp. 20:1—5, 24:8—10, 31:3—32:23]. She clearly suffers and has suffered from dementia for some time. According to Plaintiff's daughter, during the Fall of 2019 (in the midst of the litigation), she moved in with her because Plaintiff had cognitively declined. [Doc. 28-1, Fountain Decl., ¶ 5]. On November 26, 2019, nearly a month before her deposition, a doctor deemed Plaintiff mentally unfit to drive. [*Id.*, p. 6].

conference on the issue that they weren't even aware of the severity of Plaintiff's diminished capacity until the deposition itself. [Doc. 28-5, Carlson Decl., ¶ 31]; *Telephone Conference before the Honorable Tilman E. Self, III*, (M.D. Ga. June 8, 2020) (Plaintiff's attorney stated that, during deposition preparation, Plaintiff was able to recall the essential facts of the case and counsel did not believe Plaintiff exhibited signs of dementia) (audio recording on file with clerk). But, since Plaintiff's lawyers didn't know of her mental decline, that couldn't have caused them to spend extra time to prepare her to be deposed adequately. Thus, the Court finds the time to be excessive.

- Further, Plaintiff's counsel billed 25.2 hours to "Prep for Coxcom Deposition" and "Final deposition Prep" for Cox Communications' 3.1-hour deposition. [Doc. 25, p. 17]; [Doc. 18-3, p. 31]; [Doc. 28-5, Carlson Decl. ¶ 45]. This time was also plainly excessive.

Additionally, Plaintiff's records contain very vague billing descriptions that fail to identify any specific complex issue that required them to spend such an exorbitant number of hours on this case.  In total, Plaintiff attached 23 pages of billing sheets, each entry with only a fragmented sentence of justification. [Doc. 18-3, pp. 11—34]. These inadequate descriptions make it virtually impossible for the Court to determine the legitimacy of each of the hours requested.

The Court could easily eliminate the vague time entries since Plaintiff did not

justify the hours expended with clarity and particularity.[6] However, the Court finds an across-the-board cut to be more appropriate since the billing records are voluminous and—despite Plaintiff not adequately documenting the hours her attorneys spent — Plaintiff's counsel basically outlined the essential activities they undertook for the case. [Doc. 18-3, Carlson Decl., ¶¶ 15—30]; *see Loranger,* 10 F.3d at 783 ("where a fee application is voluminous, an hour-by-hour analysis of a fee request is not required").

In *Vega,* a district court implemented a 75% across-the-board reduction of attorneys' fees sought—from a $60,720.00 figure Plaintiff sought to $9,929.00—after finding, "th[e] case was a straightforward, uncomplicated matter that settled very quickly [and] by no stretch of the imagination could this be considered complex litigation. Plaintiff was represented by able attorneys who achieved a good result for their client, but they spent (or at least billed) far too much time on the case." *Vega v. Orlando Hous. Auth.,* No. 6:14-cv-1700-Orl-22GJK, 2015 WL 5521917, at *1 (M.D. Fla. Sept. 15, 2015); *see also Thornton v. Wolpoff & Abramson, L.L.P.,* 312 F. App'x 161, 164 (11th Cir. 2008) (affirming 85% reduction of lodestar in a FDCPA case); *Westlake v. Atlantic Recovery Solutions, LLC,* No: 8:15-cv-1626-T-33-TBM, 2016 WL 279439, at *4 (M.D. Fla. Jan. 22, 2016) (Reducing attorneys' hours by 75% in FDCPA case after finding "the case

---

[6] "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates . . . [F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Norman,* 836 F.2d at 1304.

was neither novel nor was it complex").

Similarly, the Court finds that—while Plaintiff's counsel achieved a positive result for their client—the time billed is flatly excessive. Simply put, it is patently unreasonable for Plaintiff's attorneys, all experienced in this type of action, to devote so much time to a case with no dispositive motions, normal (and somewhat limited) discovery, and an accepted settlement offer within 10-months.[7] Likewise, Plaintiff hasn't shown that the case was remotely factually or legally complex.

Plaintiff argues that the case included (1) three depositions, all in separate locations, (2) 44 discovery requests and responses, (3) review of 72 pages of documents from Defendant and 118 pages of documents from Cox Communications, and (4) settlement and attorneys' fees discussions. [Doc. 18-3, Carlson Decl., ¶¶ 15—30]. While all that may be true, the Court finds nothing in the record to show anything particularly burdensome or difficult about this litigation to justify such unusually high fees.

The Court finds the *Vega* case helpful. While Plaintiff's counsel ultimately obtained a favorable result for their client, "th[e] case was a straightforward, uncomplicated matter that settled very quickly [and] by no stretch of the imagination could this be considered complex litigation. Plaintiff was represented by able attorneys

---

[7] Plaintiff did not provide any cases where a court awarded over $100,000.00 in attorneys' fees in simple cases settled well before trial and without surviving a dispositive motion. Outside of complex cases (including class actions) lasting several years, the Court has found no comparator for the number of billable hours and total amount of attorneys' fees Plaintiff requests. *See Hallmark v. Cohen & Slamowitz, LLP*, 378 F. Supp. 3d 222, 230—31 (W.D.N.Y. 2019) (collecting cases).

who achieved a good result for their client, but they spent (or at least billed) far too much time on the case." *Vega*, 2015 WL 5521917, at *1. Exercising its considerable discretion and the results obtained, the Court adjusts the lodestar by implementing an across-the-board cut of 85%, reducing the total number of requested hours from 310.4 to 46.6.

### D.   Costs

Besides attorneys' fees, the settlement agreement provided that Defendant would also pay taxable costs. Plaintiff requests this Court award her $3,413.87 in reasonable litigation expenses. [Doc. 18-1, p. 19]; [Doc. 18-3, p. 38]; [Doc. 28-7, p. 35]; [Doc. 28-10]. The Defendant argues that the recoverable costs are limited to those in 28 U.S.C. § 1920. [Doc. 25, pp. 19—20]. [8] The Eleventh Circuit has stated that it is within a court's discretion to limit costs to § 1920, though declined to state that courts were required to do so for these settlement agreements. *See Embree*, 752 F.App'x at 700—01; *Sandler v. Michael Maxwell Group*, No. 6:19-cv-1688-Orl-41GJK, 2019 WL 7461690, at *6 (S.D. Fla. Dec. 13, 2019); *see also Hallmark*, F. Supp. 3d at 235—36 (the Fourth Circuit has expressly emphasized that, in cases where attorney's fees are "expressly authorized by statute," as

---

[8] Additionally, Defendant contends that the Bill of Costs should be denied in its entirety because Plaintiff did not supplement its request with any citations of authority or any copies of invoices as required by Local Rule 54.2.1. However, Plaintiff provided the invoices and necessary declarations to the Court in her reply, and the Court allowed Defendant an opportunity to respond when it granted Defendant's surreply motion. [Doc. 29]; *see* [Doc. 34]. Accordingly, Defendant has had an opportunity to respond, and the Court will consider Plaintiff's costs.

in the FDCPA, "the trial court is not limited to [§ 1920], but, in addition, has authority to include litigation expenses as part of a 'reasonable attorney's fee.' ").

Plaintiff argues that, regardless of whether her expenses are recoverable under the FDCPA, Georgia's FBPA permits these expenses. O.C.G.A. § 10-1-399(d); *see* [Doc. 28, pp. 9—10]. But, as noted above, the Court is not constrained by any statute since the settlement agreement grants the district court discretion in determining the amount to be awarded. [Doc. 14-1, p. 1]. As the settlement agreement provides for "taxable costs", the Court will limit expenses to those available under § 1920. Per that section, the Court may tax the following as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

### i.     Filing Fee Cost

"Fees of the clerk" are recoverable under 28 U.S.C. § 1920(1). Defendant does not object to taxation of the $400.00 filing fee; thus, Glover may recover it.

ii.      **Postage Costs**

Plaintiff also seeks to recover $30.01 in postage and mailing costs from three

separate transactions. [Doc. 28-7, p. 35]. However, postage is not recoverable, and these

costs will not be included. *See Nail v. Shipp,* No. 17-cv-00195-KD-B, 2020 WL 1670459, at

*12 (S.D. Ala. Apr. 3, 2020) (collecting cases finding postage is not compensable).

iii.      **Deposition Costs**

Plaintiff further seeks $2,184.37 in costs for deposing ICS ($1,213.86 cost dated

9/14/2019), Cox Communications ($658.91 cost dated 1/18/2020), and Glover ($311.60

cost dated 3/1/2020). [Doc. 28-7, p. 35]; *see* [Doc. 28-9]; [Doc. 28-14]; [Doc. 28-16].

28 U.S.C. § 1920(2) authorizes the taxation of deposition costs. *United States*

*E.E.O.C. v. W&O, Inc.,* 213 F.3d 600, 620 (11th Cir. 2000). Whether the expenses for

depositions are taxable depends on "whether the deposition was wholly or partially

'necessarily obtained for use in the case.' " *Id.* at 621. "Where the deposition costs were

merely incurred for convenience, to aid in thorough preparation, or for purposes of

investigation only, the costs are not recoverable." *Id.* "[O]btaining deposition transcripts

for use during discovery may be taxable as long as it is necessary to the issues in the

case when the deposition was taken." *Lovett v. KLLM, Inc.,* No. 4:05-cv-026-RLV, 2007

WL 983192, *6 (N.D. Ga. Mar. 26, 2007). The burden falls on the losing party to show

that specific deposition costs or a particular court reporter's fee were not necessary for

use in the case or that the deposition was not related to an issue present in the case at

the time of the deposition. *W&O*, 213 F.3d at 621; *Helms v. Wal–Mart Stores, Inc.*, 808 F. Supp. 1568, 1571 (N.D. Ga. 1992) ("since both parties should be aware of the reasons to take a deposition, the non-prevailing party should explain why the court should not grant that cost[ ]"); *see Trawick v. Carmike Cinemas, Inc.*, 430 F.Supp.3d 1354, 1370—71 (M.D. Ga. 2019) (discussing the award of taxable costs under § 1920).

Defendant has not disputed that these depositions are relevant—only that the amount was excessive and the motion was untimely—and deposing the Plaintiff, Defendant, and Defendant's client at issue are facially relevant to the case. [Doc. 25, pp. 19—20]; [Doc. 34, p. 9]. Accordingly, the Court awards Plaintiff the cost of these depositions, $2,184.37.

### iv.    Deposition Advance Cost

Plaintiff requests $90.00 for a deposition advance to "CoxCom LLC" for their appearance at the Cox Communications deposition. [Doc. 28-7, p. 35] "Fees and disbursements for . . . witnesses" are recoverable. 28 U.S.C. § 1920(3). A witness "in attendance at any court of the United States . . . or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by" statute. 28 U.S.C. § 1821(a)(1). These fees include an attendance fee of $40.00 per day and a mileage allowance. *Id*. §§ 1821(b) & 1821(c)(2).

As discussed above, Cox Communications' deposition appears reasonably necessary for use in the case. Further, Plaintiff avers that the deposition was taken at the

office of Cox Communications' outside counsel. [Doc. 28, Carlson Decl. ¶ 32(c)]. Defendant has not specifically objected to Cox Communications' fee, and the Court finds the amount reasonable for an attendance fee and mileage allowance. [Doc. 25, p. 19—20]; *see* [Doc. 28-11]. Accordingly, Plaintiff shall recover $90.00 in witness fees.

      **v.**      **Deposition Subpoena Cost**

Plaintiff also seeks to recover $450.00 for hiring NIA Inc. to serve a subpoena on Cox Communications. [Doc. 28-7, p. 35]; [Doc. 28-10, p. 2]. Defendant makes no specific objection to this claimed cost. [Doc. 34, p. 9].

"Fees of the . . . marshal," including fees for service of subpoenas, are recoverable. 28 U.S.C. § 1920(1); accord 28 U.S.C. § 1921(a)(1)(B). Private process server fees "may be taxed pursuant to §§ 1920(1) and 1921" if the fees do not exceed the rate charged by the U.S. Marshal. *W&O,* 213 F.3d at 624. The U.S. Marshal may charge "$65.00 per hour" for each item served "plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3)); *Trawick,* 430 F.Supp.3d at 1369.

"Travel costs, including mileage, shall be calculated according to 5 U.S.C. chapter 57." 28 C.F.R. § 0.114(c). "As relevant here, that chapter authorizes the General Services Administration to set mileage reimbursement rates for government employees' use of privately owned automobiles on official business." *Spatz v. Microtel Inns & Suites Franchising, Inc.*, No. 11–60509–CIV, 2012 WL 1587663 at *3 (S.D. Fla. 2012) (citing 5

U.S.C. § 5704(a)(1) and 5 U.S.C. § 5707(b)). In 2019, the year Cox Communications'

subpoena was served, the applicable reimbursement rate was $0.58 per mile.[9]

As already noted, deposition-related costs are recoverable if a deposition was

necessarily obtained for use in a case, and Cox Communications was Defendant's client,

which suggests that the deposition was reasonably necessary. Accordingly, Plaintiff

may recover the costs for serving Cox Communications' deposition subpoena, although

those costs shall be limited to the rate charged by the U.S. Marshal.

The invoice states that NIA Inc., the private process server, spent 5 hours serving

Cox Communications, 3 hours traveling to the site and 2 hours investigating while on-

site. [Doc. 28-10, p. 2]. The NIA Inc. invoice also indicates the server traveled 210 miles

to serve Cox Communications in Norcross, driving to and from Macon. [*Id*.].

The Court finds Plaintiff's private process server costs should be limited to

$325.00 (5 hours times $65.00) plus $121.80 ($0.58 per mile times 210 miles). Thus, the

Court awards Plaintiff $446.80 for serving the subpoena.

### vi.  Printing Costs

Plaintiff also seeks $121.45 in "printing" fees, which could be recoverable under

28 U.S.C. § 1920(3). [Doc. 28-7, p. 35]. "Fees for exemplification and the costs of making

copies of any materials where the copies are necessarily obtained for use in the case" are

---

[9] POV Mileage Rates (Archived), U.S. General Services Administration,
https://www.gsa.gov/travel/plan-book/transportation-airfare-pov-etc/privately-owned-vehicle-mileage-
rates/pov-mileage-rates-archived (last visited June 10, 2020).

recoverable. 28 U.S.C. § 1920(4). "Whether a prevailing party may recover costs for deposition exhibits depends on the purpose of the copies and, in particular, whether the party otherwise had access to the exhibits." *Microtel Inns and Suites Franchising, Inc.*, No. 11-60509-CIV, 2012 WL 1587663, at *6 (S.D. Fla. May 4, 2012),

However, Plaintiff does not explain why printing the "deposition exhibits" or "discovery copies" were necessary for use in the case or how the copies were used.[10] [Doc. 28-7, p. 35]; [Doc. 28-6, Daniels Decl., ¶ 13]. Because Plaintiff has insufficiently documented her printing costs, the Court will strike these costs.

### vii.     Travel Cost

Plaintiff also seeks $138.04 in travel costs for driving to a hotel for the deposition of Cox Communications from Perry, Georgia. [Doc. 28-7, p. 35]. However, the attorneys travel expenses to the deposition are not recoverable. *Mock v. Bell Helicopter Textron, Inc.*, 456 F.App'x 799, 802 (11th Cir. 2012); *see also Daugherty v. Westminster Schools, Inc.*, 174 F.R.D. 118, 124 (N.D. Ga. 1997) (noting that the distance from the residence of counsel to the location of the deposition is not an extraordinary or compelling circumstance); *Weissman v. Williams*, No. 1:15-cv-40-WLS, 2018 WL 9439689, at *6 (M.D. Ga. Aug. 28, 2018); *Nail*, 2020 WL 1670459, at *12. Thus, the Court strikes these costs.

---

[10] Moreover, Plaintiff has not provided an explanation for why these deposition exhibit costs should be taxed under § 1920(2). *See Ashkenazi v. South Broward Hosp. Dist.*, No. 11-61403-CIV, 2014 WL 3673308, at *2 (S.D. Fla. July 23, 2014) (Cohn, D.J.) ("Unless shown to be necessary, optional deposition costs such as . . . exhibits are not recoverable under 28 U.S.C. § 1920(2).").

viii.   **Total Recoverable Costs**

In total, the Court will allow Plaintiff to recover $3,121.17 in taxable costs.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorneys' Fees [Doc. 18] is

**GRANTED in part** and **DENIED in part.** The Court reduces Plaintiff's requested hours

by 85%. Defendant owes Plaintiff $12,815.00 in reasonable attorneys' fees (46.6 hours at

$275.00 per hour) and $3,121.17 in taxable costs. Accordingly, Defendant is **ORDERED**

to pay Plaintiff $15,936.37.

SO ORDERED, this 11th day of June, 2020.

s/ Tilman E. Self, III
**TILMAN E. SELF, III, Judge**
**UNITED STATES DISTRICT COURT**